UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| SHAWN DEL DAGGETT, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 1:21-CV-67-SNLJ ) |
| UNITED STATES OF AMERICA, | ) ) |
| Respondent. | ) ) |

**MEMORANDUM AND ORDER**

This matter comes before the Court on Petitioner Shawn Del Daggett's Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence. In a filing docketed on April 21, 2021, Daggett indicated his desire to raise four claims alleging the ineffective assistance of trial counsel, as well as a due-process claim that his sentence was "excessive because it now carries with it additional penalties" due to the COVID-19 pandemic. [Doc. 1 at 8-9.] This Court directed petitioner to refile his motion on a Section 2255 form, and petitioner filed an Amended Motion to Vacate that developed the original four ineffective-assistance claims, added two new ones, and attempted to convert the "COVID-19 excessive punishment" argument into a due-process claim under *Rehaif v. United States*, 139 S. Ct. 2191 (2019). [Doc. 3.]

The parties engaged in extensive briefing on the timeliness of petitioner's claims, and then this Court ordered the Government to address the merits of Daggett's claims. [Doc. 24.] This matter is now fully briefed and ready for disposition.

1

## BACKGROUND

On December 12, 2018, law enforcement officers investigating a burglary and theft developed a lead indicating Daggett was involved in the offenses. A group of officers drove to Daggett's home in Poplar Bluff, Missouri. When the officers arrived, they saw Daggett and a woman outside the residence. Daggett and the woman fled and evaded officers for hours before being caught.

Later that day, officers executed a search warrant at Daggett's residence. Inside, they found more than 20 rounds of ammunition (some in a box with Daggett's ID), methamphetamine, and materials associated with a meth lab. Officers also searched a vehicle that Daggett abandoned, which was linked to the burglary, and discovered burglary tools, meth residue, and additional ammunition.

Subsequent examination confirmed the ammunition had travelled in interstate commerce prior to Daggett's possession. Additionally, Daggett admitted both that he was a convicted felon and that he knew about his prohibited status at the time he possessed the ammo. Indeed, his Presentence Investigation Report details four prior felony convictions—including a crime of violence and a controlled substance offense—for which he served more than 3 years in prison.

A federal grand jury charged Daggett with one count of possessing ammunition as a convicted felon, in violation of 18 U.S.C. § 922(g)(1). Daggett ultimately pleaded guilty to a Superseding Information with the same charge but that included the knowledge-of-status element recognized in *Rehaif*. Specifically, "in exchange for [Daggett's] voluntary plea of guilty to the . . . Superseding Information," the Government "agree[d] that no

2

further federal prosecution will be brought in this District relative to [his possession of ammunition]" or the controlled substances and drug paraphernalia found at his residence. Additionally, the parties made a binding sentencing recommendation of 110 months under Rule 11(c)(1)(C). As part of this agreement, Daggett "waive[d] all rights to contest the conviction or sentence in any post-conviction proceeding . . . except for claims of prosecutorial misconduct or ineffective assistance of counsel." At his change-of-plea hearing, the Court ensured that Daggett was competent and that his plea was voluntary, knowing, and supported by a factual basis. The Court then accepted his guilty plea.

On November 18, 2019, the Court sentenced Daggett to the jointly recommended sentence of 110 months' imprisonment. Daggett confirmed that he did not want to file an appeal the same day, and no notice of appeal was ever filed. Thus, Daggett's conviction became final on December 2, 2019.

Over the next nine months, Daggett requested a copy of his docket sheet and a § 2255 form; both were sent to him twice at FCC Yazoo City. In November 2020, with his deadline approaching, Daggett moved for an extension of time to file a motion to vacate. The Court denied that request because Daggett failed to include any substantive allegations that could support a postconviction challenge.

Daggett then moved for reconsideration of the extension denial. The Court again denied the extension for want of jurisdiction, but it directed the Clerk's Office to docket

the motion to reconsider as a new § 2255 case.[1] In his motion, Daggett identified five specific "issues that [he] will be raising on his § 2255": a "due process violation" claiming excessive punishment and four claims of ineffective assistance of counsel for failing to provide discovery, insufficiently investigating witnesses, declining to file a motion to suppress, and providing inadequate advice to plead guilty. In October 2021, Daggett filed an Amended Motion to Vacate on a § 2255 form. In it, Daggett renewed three ineffective-assistance claims (regarding discovery, pretrial motions, and the guilty plea), added new allegations that counsel failed to file a notice of appeal and failed to object at sentencing, and attempted to convert his due-process challenge for excessive punishment to a *Rehaif* claim.  The motion for reconsideration was dated November 24, 2020, but this Court did not receive it until December 28, 2020.  Had the motion been mailed on November 24, it would have been a timely § 2255 motion.  However, it is not clear when the motion was actually mailed because it does not bear a stamp showing when Daggett submitted it to the prison's mail room.  There is also no date showing when the post office received the envelope.

The government contends that this Court should reject this postconviction challenge because petitioner's claims are untimely, the new allegations in the amended motion do not relate back to the motion for reconsideration, the *Rehaif* argument is barred by a postconviction waiver, and each claim otherwise fails on the merits.

---

[1] This Court denied the motion for reconsideration by Order of April 21, 2021 (Doc. 53 in the criminal case) but directed the Clerk to file it as a new § 2255 motion because it contains substantive claims.  Thus, the first filing in the civil case was filed on April 21, 2021.

4

## LEGAL STANDARD

"Section 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (quotation omitted). And like habeas corpus, this statutory remedy "does not encompass all claimed errors in conviction and sentencing." *Id.* (quoting *United States v. Addonizio*, 442 U.S. 178, 185 (1979)). Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief from a sentence imposed against him on grounds that "the sentence was imposed in violation of the Constitution or law of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law or is otherwise subject to collateral attack." 28 U.S.C. § 2255. The petitioner bears the burden of proof as to each asserted ground for relief. *Golinveaux v. United States*, 915 F.3d 564, 567 (8th Cir. 2019) (citation omitted).

## DISCUSSION

The government argues both that Daggett's motion is untimely, that newly-added claims in the October 2021 amended petition do not relate back to the petition, and that the claims fail on the merits.

### I.   Timeliness and the "Relation Back" Doctrine

First, this Court addresses the timeliness of petitioner's initial filing. Motions to vacate under 28 U.S.C. § 2255 "are subject to a one-year limitations period. In practice, this usually means that a prisoner must file a motion within one year of 'the date on which the judgment of conviction becomes final.'" *Mora-Higuera v. United States*, 914 F.3d 1152, 1154 (8th Cir. 2019) (citing 28 U.S.C. § 2255(f)(1)). A later deadline applies

5

"if the motion comes within one year of 'the date on which the right asserted was initially recognized by the Supreme Court, if [it is] made retroactively applicable to cases on collateral review.'" *Id.* (quoting 28 U.S.C. § 2255(f)(2)). Although timeliness is "not a jurisdictional bar," a district court is precluded from considering the merits of untimely claims where the Government timely raises a statute-of-limitation defense. *Moore v. United States*, 173 F.3d 1131, 1134 (8th Cir. 1999); *see United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999).

Here, petitioner states he submitted his motion on November 24, 2020, but it was not received by the Court until more than a month later, on December 28, 2020. The government characterizes petitioner's averment as "incredible," particularly given the absence of other evidence showing "the who, what, when, where, how, and why of his alleged delivery to a prison official." *Ford v. United States*, 917 F.3d 1015, 1026 (8th Cir. 2019); *United States v. Haro*, No. 8:18CR66, 2020 WL 5653520, at *3 (D. Neb. Sept. 23, 2020) (quoting *Ray v. Clements*, 700 F.3d 993, 1011 (7th Cir. 2012)). The parties engaged in lengthy briefing on whether petitioner is entitled to the "mailbox rule" in light of the fact that the envelope was not stamped with the date it was received in the prison mailroom. *See Haro*, 2020 WL 5653520 at *3. Petitioner notes that, at the time in question, the prison system and indeed systems all over the world were being challenged by the COVID-19 pandemic and its appurtenant staffing shortages and other system failures. Certainly, it is an aberration that the envelope was mailed by the prison but did not receive a stamp from the mailroom first. Regardless, the Court concludes that petitioner's claims fail on their merits, so, out of an abundance of caution and in the

6

interest of justice, and without deciding the issue of timeliness, this Court addresses petitioner's claims on the merits.

Before this Court can address the merits, however, the Court considers whether claims made in petitioner's October 2021 amended petition may be considered timely. An otherwise-untimely amended motion to vacate will "relate back" to the date of the original pleading only if the claims asserted in both pleadings arose out of the same conduct, transaction, or occurrence. *See* Fed. R. Civ. P. 15(c)(2); *see also Craycraft*, 167 F.3d at 457 (applying "relation-back" doctrine). To satisfy this standard, "the claims must be tied to a common core of operative facts," and "[t]he facts alleged must be specific enough to put the opposing party on notice of the factual basis for the claim." *Taylor v. United States*, 792 F.3d 865, 869 (8th Cir. 2015) (citing *Mandacina v. United States*, 328 F.3d 995, 1000 (8th Cir. 2003)). When claims are so general that it cannot be discerned if the original motion would have provided notice of the amended claim, the claim cannot relate back. *Id.* at 870. For example, "it is not enough that both an original motion and an amended motion allege ineffective assistance of counsel during a trial." *Dodd v. United States*, 614 F.3d 512, 515 (8th Cir. 2010).

In his October 2021 amended motion, for the very first time, Daggett claims he asked "counsel of record to file a notice of appeal due to the fact that his mother . . . had informed the arresting agency that the 'bullets' (ammunition) were all hers." Also for the first time, he argues counsel failed to object to a prior state conviction qualifying as a controlled substance offense for purposes of U.S.S.G. § 2K2.1(a). Petitioner also seeks to convert his due-process argument to a claim under *Rehaif v. United States*, 139 S. Ct.

7

2191 (2019).

The government argues that these newly-added claims are too far removed from the initial claims to "relate back" to the original petition and save them from untimeliness.  This Court agrees.  Here it is plain that the two newly-added ineffective assistance claims (failure to file a notice of appeal and failure to object at sentencing) are wholly separate from the four ineffective assistance of counsel claims that petitioner raised in his initial filing (full discovery, investigating witnesses, suppress bullet evidence, and advice to plead guilty).  In *Craycraft*, for example, the petitioner's first 2255 motion included claims related to failure to pursue a downward sentencing departure and failure to object to the type of drugs at issue; petitioner's amended petition attempted to add a claim related to counsel's failure to file a notice of appeal.  The Eighth Circuit, holding that the amended petition did not relate back to the original, stated,

> Craycraft's original complaint alleged deficiencies of representation distinctly separate from the deficiency alleged in his amendments. Failing to file an appeal is a separate occurrence in both time and type from a failure to pursue a downward departure or failure to object to the type of drugs at issue. We cannot say that his original petition would provide notice of such a different sort of theory. Therefore, the amendment cannot relate back under Rule 15(c) and it must be time barred.

167 F.3d at 457.  Similarly, here, there is no common nucleus of operative fact between the claims in the first and second-filed petitions, and the four claims in the initial petition would be entirely unlikely to provide notice of the two claims in the amended petition. *See Taylor*, 792 F.3d at 869; *Mandacina*, 328 F.3d at 1001; *Craycraft*, 167 F.3d at 457.

In addition to the timeliness issue, this Court is compelled to note that petitioner's claim that counsel failed to file a notice of appeal appears to be wholly without merit.

8

First, petitioner waived his right to appeal at the time of his plea. At sentencing, petitioner signed a form that stated he did not wish to appeal and that he had instructed his attorney not to file an appeal.  [*See* Doc. 47 in Case No. 1:18cr18.]  And, as discussed below, to the extent any such appeal would be based on his claims that the ammunition was not his, the record demonstrates otherwise.

The newly-added ineffective assistance claims in the October 2021 petition are untimely and will be dismissed.  The *Rehaif* claim states that the government could not prove Daggett knew he belonged to a category of persons prohibited from possessing ammunition, rendering his plea involuntary.  This is again an entirely different claim from the due process claim previously posed by petitioner.  It is also untimely and will be dismissed.

### II.     Ineffective assistance of counsel claims

Petitioner's original motion identified four specific claims concerning the allegedly deficient performance of his trial counsel:

- "counsel failed to present full discovery at Daggett's request"
- counsel "failed to properly investigate/interview witnesses after Daggett informed counsel that his mother and son were key witnesses to the case"
- counsel "failed to file any motion to suppress the bullets after Daggett had informed counsel of key witnesses"
- counsel's "inadequate advice to pleade [sic] guilty – where Daggett can demonstrate prejudice by an actual innocent [sic] claim and an articulated plausible defense that could have been raised at trial."

[Doc. 1 at 8.]

### a. Legal standard

"A defendant faces a heavy burden to establish ineffective assistance of counsel pursuant to section 2255." *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000) (quotation omitted). Ineffective-assistance claims are governed by the standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). "This standard requires [a petitioner] to show that his trial counsel's performance was so deficient as to fall below an objective standard of reasonable competence, and that the deficient performance prejudiced his defense." *Nave v. Delo*, 62 F.3d 1024, 1035 (8th Cir. 1995) (quotation omitted) (emphasis added). "Failure to satisfy either [the performance or prejudice] prong is fatal to the claim." *Cole v. Roper*, 579 F. Supp. 2d 1246, 1263 (E.D. Mo. 2008) (citation omitted). Indeed, "[i]f the petitioner makes an insufficient showing on one component, the court need not address both components." *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir. 2000).

Under the performance prong, courts "apply an objective standard [to] determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Nave*, 62 F.3d at 1035 (quotation omitted). In doing so, a court must be careful to "avoid the distorting effects of hindsight . . . by looking at the circumstances as they must have appeared to counsel at the time." *Rodela-Aguilar v. United States*, 596 F.3d 457, 461 (8th Cir. 2010) (citation omitted). The starting point for this analysis is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. (citation omitted).

10

Counsel's strategic decisions "made after a thorough investigation of law and facts . . . are virtually unchallengeable," even if those decisions prove unwise. *Strickland*, 466 U.S. at 690.

Under the prejudice prong, the petitioner must show "a reasonable probability that, but for a counsel's unprofessional errors, the result of the proceeding would have been different." *Nave*, 62 F.3d at 1035 (quotation omitted). This inquiry depends on the likelihood of success if the alleged error were corrected. *Hill*, 474 U.S. at 59. "[I]f there is no reasonable probability that [a course of action] would have been successful, [the movant] cannot prove prejudice." *DeRoo*, 223 F.3d at 925.

      b. **Discussion**

All four of Daggett's ineffective-assistance claims fail because there is no evidence to support the common premise that his mother told law enforcement that the ammunition in the home was hers. In fact, this contention is not only unsupported by an affidavit from Daggett's mother, but it is directly contradicted by Daggett's sworn admission that he possessed the ammunition. Plea Tr. at 12–14.  Indeed, representations made during the plea hearing "carry a strong degree of verity and pose a formidable barrier in any subsequent collateral proceedings." *See Ingrassia v. Armontrout*, 902 F.2d 1368, 1370 (8th Cir. 1990).  Moreover, even if the ammunition *did* belong to his mother, Daggett would still be liable for joint and constructive possession, especially considering that some of the ammunition was found in a box with his ID, Plea Tr. at 13—not to mention the undisputed fact that another box of ammunition was found in the vehicle in which he was apprehended after fleeing from officers, *see* PSR ¶ 14. The Government

11

submitted the entire discovery file that was produced to trial counsel, which further demonstrates the frivolousness of Daggett's claims.

### i. Ineffective Assistance Ground 1: Failure to provide discovery

Daggett's claim based on failure to provide discovery fails on the performance prong because Daggett verified under oath that he was fully satisfied with trial counsel, that he and counsel had discussed the case, and that there was nothing the attorney failed to do in representing him. Plea Tr. at 5. But even assuming trial counsel refused "to present full discovery at Daggett's request" [Doc. 1 at 8], there was no *Brady* evidence concerning "the fact that his mother had informed the arresting agency that all the firearms were hers and all ammunition" [Doc. 3 at 19]. Indeed, the only statement from the mother in the discovery file was inculpatory, as it indicates Daggett threatened to burn down his mother's house after she refused to help him evade police and that she wanted him to be arrested because she believed he would follow through with the threat. *See* Ex. B at Bates 00042. The reports also reflect other damning evidence, including that ammunition was found in Daggett's bedroom and his admission that law enforcement had him "dead to rights" after explaining potential felon-in possession charges. *Id.* at 00046, 00060. Thus, Ground 1 also fails on the prejudice prong, as the discovery file further establishes Daggett's guilt.

### ii. Ineffective Assistance Ground 2: Failure to investigate

The discovery file similarly confirms there is no basis for finding trial counsel's performance deficient with respect to Daggett's failure to investigate argument. *See Gray v. Whitley*, 992 F.2d 324, 1993 WL 152163, at *3 (5th Cir. 1993) (unpublished)

12

(counsel's performance "must be measured considering what he knew at the time of his investigation"). Moreover, "even if we assume that counsel's failure to interview [potential witnesses] did not meet an objective standard of conduct, [he] still needs to make a substantial showing that, but for counsel's failure to interview the witness[es] in question, there is a reasonable probability that the [outcome] would have been different." *See United States v. Vazquez-Garcia*, 211 F. App'x 544, 546 (2007) (quotation and alterations omitted).

Daggett falls well short of this bar, as "[h]e has not provided any independent evidence . . . as to what [his mother] would have allegedly said had [she] been interviewed or called to testify," *id.*, much less even speculate as to the benefit of interviewing his son. Accordingly, Daggett's second ground plainly fails on the prejudice prong. *See Hadley v. Groose*, 97 F.3d 1131, 1135 (8th Cir. 1996) ("To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony would have probably changed the outcome of the trial." (internal citation and quotation omitted)).

### iii.  Ineffective Assistance Ground 3: Failure to seek suppression

Petitioner's Ground 3, for failure to seek suppression of evidence, also falls short. Although not entirely clear, Daggett appears to advance three arguments. *First*, he complains that "[t]he arresting agency was there at Daggett's mother's home looking for stolen property" and "not . . . guns or ammunition." Amend. Mot. at 20. But it is perfectly lawful for officers to seize contraband found during the execution of a search warrant authorizing the seizure of distinct items. In fact, the Eighth Circuit rejected a

13

nearly identical ineffective-assistance claim where defense counsel declined to move for suppression on a warrant that "authorized a search for drugs only and did not specifically list the firearm which was seized," as the plain-view doctrine applied. *United States v. Johnson*, 707 F.2d 317, 321-22 (8th Cir. 1983). And here, like in *Johnson*, "(1) [t]he initial intrusion was lawfully made pursuant to a valid search warrant"; "(2) [t]he discovery of the [ammo] was inadvertent, [even had] the searching officers expected to find [it]"; and "(3) [t]he incriminating nature of the firearms was immediately apparent because of [Daggett's] status as a known felon." *See id.*

*Second*, Daggett's reference to "a lack of federal jurisdiction with the search warrant" is also defeated by *Johnson*, which upheld a seizure pursuant a state search warrant that ultimately resulted in a federal prosecution. *Id.* at 321.

*Third*, Daggett appears to argue that a *Franks* hearing would have uncovered the officers' purported knowledge that the ammunition belonged to his mother. Amend. Mot. at 19–20. But, even beyond the lack of evidence supporting this claim, *Franks* applies only where false statements are used in an affidavit, *see, e.g.*, *United States v. Reinholz*, 245 F.3d 765, 774 (8th Cir. 2001). Here, it is undisputed that neither affidavit referenced firearms or ammunition, and by the terms of Daggett's argument, officers spoke with his mother "during the search of the property," Amend. Mot. at 20, well after the warrant was issued. In sum, all three suppression arguments fail because the failure to file a meritless motion to suppress does not amount to ineffective assistance of counsel. *See Johnson*, 707 F.2d at 320.

14

### iv.  Ineffective Assistance Ground 4: Guilty plea advice

Finally, petitioner's fourth ineffective assistance ground, that it was bad advice for petitioner to plead guilty, is premised on the same unsupported assertion that "[t]he ammunition belonged to Daggett's mother." Amend. Mot. at 21. As noted above, without any evidence to substantiate this claim (and to rebut his joint or constructive possession), he cannot overcome the "formidable barrier" of his sworn statements to show that counsel's plea advice was deficient. *See Ingrassia*, 902 F.2d at 1370. Moreover, even if the ammunition did belong to Daggett's mother, he certainly would have known that fact at the time of his plea, so it is unclear how his attorney's performance had any impact on this part of his decision to plead guilty.

In sum, all four of Daggett's original claims related to ineffective assistance of trial counsel fail on both the performance and prejudice prongs of *Strickland* and, thus, fail on the merits. 6 Daggett misstates the standard for showing prejudice on ineffective-assistance claims concerning accepted plea offers.

### v.  Due-process claim

Petitioner's remaining claim is a based on a purported due process violation. Specifically, Daggett claims that his sentence "is now excessive to what [he] plead[ed] guilty to and agreed to in his plea agreement . . . [d]ue to COVID-19," which has brought with it various "additional penalties." *Id.* Daggett did not expand on this ground in his amended motion.

Daggett's original due-process claim fails for at least three reasons. *First*, "a claim of an excessive sentence when the sentence imposed is within the statutory maximum" is

15

not cognizable under Section 2255. *Houser v. United States*, 508 F.2d 509, 516 (8th Cir. 1974). Here, Daggett recognizes that his 110-month sentence is below the then-applicable statutory maximum of 120 months. Amend. Mot. at 21.

*Second*, unlike his ineffective-assistance claims, Daggett's due process claims are barred by his postconviction wavier. Crim. Doc. 34 at 7–8; *see DeRoo v. United States*, 223 F.3d 919, 923 (8th Cir. 2000) (recognizing as a general rule the enforceability of postconviction waivers that are knowing and voluntary).

And *third*, Daggett's pandemic punishment claims fail on the merits, as courts repeatedly "have held that a public health crisis is not among the potential grounds for relief under 28 U.S.C. § 2255." *Beck v. United States*, No. 6:15CR4-2, 2021 WL 7710898, at *5 (E.D. Tex. Oct. 4, 2021) (collecting cases).

## CONCLUSION

In sum, the claims in Daggett's amended motion fail to relate back to the original petition and are thus dismissed. All five of the claims in Daggett's initial motion fail on the merits even if that motion had been timely filed.

Accordingly,

**IT IS HEREBY ORDERED** that petitioner Shawn Del Daggett's Amended Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence [Doc. 3] is **DENIED**.

**IT IS FURTHER ORDERED** the Motion to Dismiss [Doc. 15] is **DENIED as moot**.

**IT IS FURTHER ORDERED** that this Court will not issue a certificate of appealability because Petitioner has not made a substantial showing of the denial of federal constitutional right.

**SO ORDERED** this 30th day of September, 2024.

STEPHEN N. LIMBAUGH, JR.
SENIOR UNITED STATES DISTRICT JUDGE